I appreciate the court's patience and attention to this case, especially in light of Judge Callahan's somewhat humorous but I think true statement. This is Friday afternoon, the last argument in a long week for you folks. So thank you again for your attention. There are a couple issues on appeal that I'd like to address. One is the timeliness of the filing of the EEOC charge under the statutes and regulations that are applicable. And secondly, the constitutional challenge to the exemption of religious nonprofits from the definition of employer under the WLAD. I'm going to spend some time on the statutory and regulatory issue, but it will be quite cursory unless the court has questions so that I have time to address the constitutional issue. In this case, the district court dismissed Ms. McDonald's claim on the grounds that under the applicable regulations and statutes, she only had 180 days rather than 300 days to file a charge with the EEOC. It did that on grounds that the Washington law against discrimination exempts from the definition of employers who are covered by the statute religious nonprofit organizations. And since the charges filed by Ms. McDonald were against churches, the court held that it was 180 days rather than the 300 days that applied to FEP jurisdictions. In other words, under the Title VII statute and the applicable regulations, where there is an FEP agency, an FEP agency is an agency designated to have co-responsibility for those charges because it has authority over those types of charges. And where there's an FEP agency, the charging party gets 300 days rather than 180 days. Ms. McDonald argued unsuccessfully in the trial court that the EEOC had designated the Washington Human Rights Commission, which is the applicable FEP agency in this case, as a complete FEP agency and had made no exceptions under its regulations, designating it merely a notice agency for purposes of charges against religious organizations. And furthermore, McDonald argued and argues to this court that the Human Rights Commission, the Washington Human Rights Commission, does have jurisdiction over the charges that were filed in this case. That is because the Washington law against discrimination and the HRC's jurisdiction doesn't extend just to employers. It extends to persons who either retaliate- Retaliation claims and, Your Honor, for aiding and abetting claims. Okay. And in this case, one of McDonald's claims was that the three defendant churches retaliated against her for complaining about sexual harassment. Is that the claim under state law or federal law? Under state law, under the Washington law against discrimination, there is a- The claim depends on, doesn't it, on your, the success of your attack on the state statute because retaliation requires some protective activity. The activity wouldn't be protected if it involves an exempt institution, right? I don't think it involves an exempt institution, Your Honor. She was complaining- A non-profit religious group, is it? Right. But she was complaining that she was being sexually harassed. We're talking about the retaliation claim. Right. And let me see if I can put it this way. Who retaliated? She had, the retaliation was allegedly by the three churches who we alleged under Title VII were an integrated enterprise. And, but under the WLAD claim, a person, which could include any one of those entities, may not retaliate against someone who engages in protected activity. So she was complaining that she was being sexually harassed by a minister. And a minister is a- For what, though? Harassed for what? I'm sorry? She was harassed for doing what? She was just being sexually harassed. Right. So where does the retaliation come in? The retaliation comes for complaining about the sexual harassment. No, no, no, no. She complained to what was a retaliatory act? A discharge. A discharge. Yes. She was, so the plaintiff's claim is that she was being sexually harassed by a minister, who is a person also subject to the WLAD. She complained about that to these third- The elders or what, the people in the church? Yeah, to the three churches. And she was, her employment was terminated in retaliation for that. That would be covered by the WLAD. Also, the WLAD- Well, when you say covered, regardless of whether your attack on the constitutionality of the WLAD is successful? Yes, Your Honor. And the same goes for the aiding and abetting statute. It has another little wrinkle in it. While it prohibits persons from aiding and abetting discrimination, and it can apply, it only applies to third parties, to non-employers. There's a court of appeals decision saying that, and it's in the brief. So in this instance, two of the defendants- We have to interpret persons to mean employers, right? Persons for the aiding and abetting statute have to be third parties. They can't be the employer. You can't aid and abet yourself, essentially. So you'd be aiding and abetting the discrimination. But in this instance, two of the defendants, the Pacific Northwest Presbytery and the Presbyterian Church in America, contend they aren't employers. So it's possible that they are third parties. Did someone just get out of the lawsuit? Didn't I see? Isn't there something that was filed recently that one of those people was got out, is not in the lawsuit? Oh, okay. Yeah, somebody sent us a judgment or something by Judge Kuhnhauer, wasn't it? Well, I wasn't aware that was supplied to you by the court. There is a parallel State court case. Remember Judge Lasnik dismissed without prejudice the other State law claims, and that case is going forward. But that's a separate case from this case. But that case also, doesn't it, challenge the constitutionality of the State statute? I have alleged that, yes, Your Honor, in that case. Where does that case stand? That case is still pending before the court. The district court has dismissed a portion of my claims, but not the other. Depending on which stage. Are you ready for trial? Did you get a trial date? We had a trial date, Your Honor. That trial date has been put in abeyance because of this appeal. This is the district court for the Western District of Seattle. Susanne McDonald against the Greece Church Northwest, the Pacific Northwest Presbytery, and the Presbyterian Church in America. And, yeah, Judge Kuhnhauer, defendant's motion for summary judgment is granted. Plaintiff's claims for wrongful termination in violation of public policy and negligent supervision against those defendants are dismissed. Yes, Your Honor, but that's only part of the claims. There are other pending claims still going forward. And there's one more motion, partial summary judgment motion pending, I guess two, actually, from the two of the defendants. And then Judge Kuhnhauer has put the trial schedule in abeyance because of this appeal at the request of both parties. So just to finish on the aiding and abetting, it's possible then that the aiding and abetting statute would also apply in this circumstance. And this is exactly, precisely the situation that the U.S. Supreme Court in commercial office products talked about when it said you should give deference to the EEOC's determination of the time requirements for the charge. And because this EEOC doesn't have time or expertise to figure out complicated issues of state law that might apply to the timeliness of the charge, it undermines the administration and enforcement of Title VII to burden the EEOC with that on a case-by-case basis. Well, it seems to me that your interpretation of the Supreme Court's decision in commercial office is at odds with the provisions of the CFR that allows states and local governments to determine the jurisdiction of their fair employment practice agencies. I'm understanding your reading of commercial office. Well, under your reading, to what extent may a Title VII plaintiff be required to look to a state law to determine the jurisdiction of a state agency? May a plaintiff be entitled to look? Well, I think that where the plaintiff would look would be the EEOC regulations, Your Honor, because I'm not saying the state agency can't determine its own jurisdiction subject to constitutional limits. But when the EEOC administers the Title VII time requirements, instead of doing a case-by-case basis, it takes a look at the state and local FEP agencies, makes regulatory determinations that's embodied in the CFRs that are in the appendix, and says, okay, this agency is a total FEP agency. This agency, like the Arlington agency that I mentioned in the brief, is only a notice agency for actions against the Virginia government. So they make exceptions. And they do that state-by-state, not case-by-case-by-case. Otherwise, it would be unworkable. So the EEOC has made this determination in its regs that Washington is a FEP jurisdiction with no exceptions. Probably, I think, because it correctly read the Washington law. And if that is the case, that agency should be given deference. And even if this Court should find that the Washington jurisdiction isn't completely matching up with Title VII's jurisdiction, still, that's too complicated an issue on a case-by-case basis for the EEOC to determine time limitations. So I think a plaintiff should look at the regulations. The regulations say we're an FEP agency state, and 300 days is the limit. So I'd like to turn now, if I can, to the constitutional issue. The existing ---- Kagan. But you are raising for the first time on appeal, correct? Yes. And, Your Honor, I think that there's no prejudice to the defendants in regard to that. And this Court should consider that. There's many cases saying that this Court will consider a pure issue of law when there's no factual record that leads to it. There's also many cases, sir, many other cases that say we won't. But I guess, you know, what I'm wondering is why isn't it better to have the district court take the first shot at it since you already have a case pending before the district court that raises the very same issue, right? Yeah. I have a subsequent case pending before the district court, Your Honor. But I will lose my Title VII claims if this Court doesn't look at it. And the cases that you mention, Your Honor, where this Court has declined to look at an issue on appeal, a purely legal issue such as this one, there are only two circumstances, one where it's a whole new legal claim. That isn't the case here. What we're saying here is you should apply this to determine whether our Title VII claim is viable. Is it totally legal? I believe so, Your Honor. It's just a pure constitutional issue about the validity of the exemption. And I don't think there's any factual record that needs to be developed in a trial court that would pertain to that issue. So turning to the constitutional issue, of course the exemption is a flat-out blanket exemption for religious nonprofit organizations. It is not a neutral exemption. And I think that's important in the Court's analysis. Under the Lemon analysis, the familiar three-prong analysis, there must be a secular legislative purpose. There must be a primary effect that neither advances nor inhibits religion, and it must not foster excessive government entanglement with religion. And those are conjunctive. Any one of those would cause the statute to be unconstitutional under the Establishment Clause. Briefly, with regard to the secular purpose, the statute flat-out says we want to favor religious nonprofits over secular nonprofits. There is no secular purpose. There's no secular purpose pronounced in the statute. There's no legislative history to tell us what a secular purpose should be. And the language itself is a straightforward preference for religion. As the Supreme Court in McCrory said, it makes practical sense to scrutinize whether there's a secular purpose, where you can do that from the facts, from the language, from the legislative history, from the context. But this Court shouldn't engage in any judicial psychoanalysis, the McCrory Court said, in order to try to find out if there's a secular purpose. Here, as I said, the language is a flat-out favoring of religion. There's no statement of legislative purpose. The context that states' brief says, well, if we look at the context, we know that the Washington Constitution provides more protection, both for free expression and the separation of church and state. And perhaps that's what the legislature had in mind. The problem with that is, first of all, it's speculation. But even more importantly, as I point out in the brief, the case law at the time that the exemption was enacted in 1949 and going through the 1950s and up until now all created a balancing test. There was no absolute protection for free exercise of religion. The case law said there could be a burdening of free exercise of religion when there's a compelling State interest that's narrowly tailored to that interest. And that's the question. Kagan. It's getting close to 4 minutes. I don't know if you want to save the balance to read about what they have to say about it. Okay. How many minutes do I have, Your Honor? Four minutes. Four. Four. Okay. May I use two more for this? You can use as much as you want, but you won't have any more left. So with regard to that, then I don't think that's the interest, the secular interest in a blanket exemption that doesn't have any of that balancing, especially when you look at the legislative purpose of the WLAD as a whole, which says that discrimination threatens the institutions and foundations of a democratic State and it expresses the highest priority public policy in the State. You would think then there would be some balancing within that. Turning to the primary effect, it advances religion. It does that because there is no balancing. This is not a neutral statute that incidentally benefits religion. It's more like the Texas Monthly case where there was just a flat-out blanket exception for religion. What the defendants in the State really attempt to do is import the ministerial exception or the expanded ministerial exception into the language of the exemption, but that is not there. And what it really does here is it's a legislative, if it were a legislative attempt to balance those interests, like in Qatar and like in Calder, there would have to be some balancing that the legislature engaged in. So because there is no balancing, I think that it violates the Establishment Clause. And this Court really has only three options. One is to read the ministerial exception into the language, which I don't think is justified, construe it as identical to the scope of the Title VII exemption, because we know that's constitutional, or strike the exemption altogether and let the legislature engage in a balancing of those interests, which is what I think should happen. And thank you, Your Honor. All right. Thank you. Good morning. Please, the Court. My name is Stephen O'Bannon. I represent Graves Church, Seattle. I have evenly divided my time with my co-counsel, Lori Johnston, who represents the Pacific Northwest Presbyterian Church in America. We've also divided the issues. I plan to address the untimeliness issue, which was the basis for the district court's dismissal, as McDonald's claims below. Ms. Johnston will address the grounds on which the Court could decide this appeal without addressing the constitutionality issues, and then she will also address the constitutionality issues. Plaintiff failed to timely file her charge. Our position is elegantly simple. We rely on the plain reading of the EEOC's procedural rule, which is directly on point. When do you need to file your charge for it to be timely? And that's 29 CFR 1601.13. The Court has already alluded to that. I provided copies for each of the panelists for your ease of reference. 1601.13 reads in pertinent part, a jurisdiction having an FEP agency without subject matter jurisdiction over a charge, such as an agency which does not cover sex discrimination or a nonprofit corporation, is equivalent to a jurisdiction having no FEP, and so the 180-day deadline applies. The district court below correctly ruled that the Washington State Human Rights Commission for 56 years has lacked subject matter jurisdiction over religious organizations, and it dismissed the charge. On its face, this rule assumes that an FEP has been designated by the EEOC, but nonetheless may still lack jurisdiction over certain charges, such as a charge against a nonprofit or a religious organization. Now, plaintiffs claim that the subject matter jurisdictional limitation of 1601.13 is somehow subsumed in 1601.74. I provided that regulation to your honors. This is the provision which says that if a state agency meets the qualifications of an FEP, then it's listed, and then if there's some charges that it's not a FEP, then it's a notice agency. If Ms. McDonald's construction is correct, that essentially the 1601.13 dealing with 1601.74, then you would expect 1601.13 to say that a jurisdiction is a notice agency if it is without subject matter jurisdiction. It doesn't say that. The nomenclature of 106.174 is notice agency and FEP agency. The nomenclature of 106.13 is FEP or you're not an FEP. If you look at the index which I provided to the courts, you'll see the subpart B under which 1601.13 is indicated. This is the section that deals with procedure for the prevention of unlawful employment practices. This is what the litigant has to go through to perfect their claim. Make sure it's timely filed. That's the section that 1601.13 deals with. 1601.74, however, is under subpart G dealing with the agency designation procedures. So just on the clear organization of these regulations, we can see that there is no intention for 1601.13 to be part of the qualification process for becoming an FEP. In this court's circuit, there are nine states and each one of them has a religious organization exemption. California, Washington have nearly identical ones. We'll talk about it in a few minutes. Not a single one of those states are indicated to be an FEP or a notice agency for purposes of religious organization. You would expect, if Ms. McDonald's construction is correct, you would find under .74, you would expect there to be a notice agency for purposes of the following lack of subject matter jurisdictional areas, such as a religious organization. 7-4 says nothing along those lines. So what that means, then, is if Ms. McDonald is correct in her construction, it means that the EEOC has really turned federalism on its head. She's saying that the EEOC can come along and decide that some states, even though they have an explicit religious organization exemption, can nonetheless be designated as an FEP without exception and they have jurisdiction over religious organizations. That can't possibly be the meaning of 1601.3 or 1.6174. Now, the courts have addressed this issue. Plaintiff's counsel talked about the commercial case, the commercial products case. But we cited in our materials the Vidig case, Vidig v. Multistate State Tax Commission. This case is right on point. This is an Illinois case in which the Human Rights Commission lacked jurisdiction over small employers, 15 or less employees. And the court didn't look to 106.174 to determine whether it was the 180 days or whether it was the 300 days. The court looked to state law. And the court said because state law exempts small employers, the 180-day deadline applies, not the 300. And interestingly enough, Illinois Human Rights Commission is designated as an FEP without exception, just like Washington. The Moher v. ChemFed case is instructive, too, along this line. And it actually talks about the commercial case that Plaintiff's counsel was talking about. Moher dealt with a district court action in which it applied the 300-day period because the defendant was arguing that on the merits of the defendant's claim, the State Human Rights Commission of that state did not have jurisdiction. The court said that's too complex. We're not going to require the EEOC to weigh the merits of the claim. We're going to apply the 380-day rule. But then the court distinguished its case from a case like ours. It said in those cases where the 180-day period was applied, in those cases it seems that a determination of the state agency's jurisdictional reach requires far less state law analysis. And it referred to the Vidig case, the one I just mentioned. So the courts have made this distinction between the complex analysis of the commercial case and the simple, straightforward analysis of the Vidig case and of this case, where you have an explicit exception in the statute which says the State Human Rights Commission does not have and has never had since the inception of Washington's law against discrimination, does not have jurisdiction over religious organizations. That is a clear, simple analysis that the EEOC can do and did do in this case. And it was an exemption which plaintiff's counsel was fully aware when she filed her lawsuit she did not allege violation of our Washington law against discrimination, recognizing, as she said in her opening brief on the motion to dismiss, that there's no jurisdiction over religious organizations. I don't want to cut into my co-counsel's time. How much time do I have? Well, you have a minute and a half. If you're going to give her, you're giving her half, right? Let me just finish then on dealing with this issue about plaintiffs for backup argument under the retaliatory discharge issue. And that is that the Washington courts have already squarely dealt with this issue of whether in this context a person can be expanded to include an employer-employee relationship. And the court in Mallow v. Alaska Division I case, the court said no. I'm not a Latin scholar, but the Doctrine of Construction of Aegestum Generis or of the same kind says that whenever you have a term that is general and broad followed by specific terms, persons followed by employer, you construe the broad term to be limited by the more narrow terms. Otherwise, you read the specific terms right out of the statute. And the court said for purposes of section 4962.210, which is what plaintiff is arguing, that that has to be limited to an employer-employee relationship. A person can't be broadly expanded to the employer-employee relationship. That's a State law case. That's a State law case. And this circuit has said time and time again. It's not in that brief, did you? It is. It is in our brief. And this circuit has said time and time again, we will be bound, we choose to be bound by the rulings of a State court when it's dealing with State issues. Thank you, Your Honor. Thank you. May it please the Court. My name is Lori Johnston. I'm here on behalf of Pacific Northwest Presbytery and the Presbyterian Church in America. Good morning. Good morning. As my co-counsel indicated, I will address the constitutionality of the religious employer exemption. And I also will deal with alternate grounds by which this Court could uphold the lower court's dismissal without delving into the constitutionality issue. While we believe the 56-year-old exemption is constitutional, it is not necessary to delve into that issue. There are at least two other grounds which this Court could use to uphold the lower court's dismissal. One, Ms. McDonald cannot show that she can meet the 15-employee requirement of Title VII. And two, she cannot show that either the PCA or the presbytery were Ms. McDonald's employer. And Ms. McDonald has alleged that these issues are not. Did the district court rule on that question about whether you're an employer? No. The – well, the district court in this case did not rule on that issue. But the briefing was completely presented to that court. Both sides have fully presented that issue to the court. And while Ms. McDonald chose not to brief that issue to this Court, the facts and evidence was presented to Judge Lassink. And as in even the case decided by Ms. McDonald, this Court can affirm on any judgment supported by the record, and the record here does support that these issues were discussed above. Maybe this is not your issue. But wasn't there also a question presented about whether or not Grace Church met the 15-employee test? Grace Church only had six employees. That issue was presented to the district court, too. Yes, it was. The issue – Another issue it did not rule on? No. The judge chose to rule on the narrow issue of the untimeliness, even though both Grace Church and the PCA and Presbytery all presented evidence that they – that, one, the PCA and Presbytery were not the employers and we were not joint employers, single employers, et cetera, and all presented evidence of how many employees there were in each of the entities. And the record is clear enough that, I mean, we could – if we were so inclined to depend on that as an alternate ground? Absolutely. I believe that all of this documentation is in the lower court record that has been presented to you as part of the excerpt of the record, and you could certainly rule on those grounds. There is sufficient evidence there. We also presented to you, in the form of supplemental authority, Judge Kuhnhauer's order recently. The PCA and Presbytery had moved to dismiss Ms. McDonald's wrongful discharge claim in what we've been calling McDonald 2 on the grounds that the PCA and Presbytery were not Ms. McDonald's employer. And there, the Court, looking at the exact same evidence and arguments that were presented to Judge Lasnik and that have been presented to this Court, concluded that we were not the – not the employer. The Court found that we did not and could not control Ms. McDonald's workplace and, therefore, were not the employer. And by that same token, if you elaborate on that argument, if you take out the PCA and the Presbytery, that leaves only Grace Church, which the evidence will show in less than five employees. They don't meet the 15-employee requirement, and, therefore, their Title VII argument fails on that ground as well. Well, if it's that clear, and I have to confess I haven't looked at it that closely, but if it's that clear, it seems to me, and maybe this is your argument, we should try to avoid the constitutional question. I absolutely agree. I think the easiest thing that you should do is decide the PCA and the Presbytery are not the employer and find that she doesn't meet the 15-employee requirement under Title VII. I think that's by far the easiest thing for this Court to do. And the evidence and record is certainly there for you to do that. It finds a clean and compelling reason to grant the dismissal without even getting into the constitutional issue. Well, I guess then going – but let's – okay, you've given us that. And then if we go to – she's saying it's purely a legal issue. Is it purely a legal issue? I don't think so. And neither did the Attorney General. I'm concerned about the ministerial privilege in determining, you know, what – I mean, whether we have – we'd have to develop any facts about how the defendant's treatment of its clergy in violation of the free exercise in the First Amendment would factor into this. The Court generally wants to, if it's looking at a constitutional look at this, on the narrowest possible grounds. And I would say, as applied here, as both we argued and the Attorney General argued, that there are facts that need to be developed as to whether the statute is constitutional as applied in this situation. We don't have the evidence related to how the ministerial exception would fully play out here. I think this case is much more an analysis to the Wirth case than the Bollard case, and that the ministerial exemption would be key, and the process that went through with regards to examining the minister's behavior would be key in examining that. Those are facts that need to be developed, and were not developed by the lower court, and that's why the constitutionality issue here shouldn't be looked at, in addition to other having simple grounds that this Court could look at. If the Court does look at the constitutional issues, I think there's a quote from Justice Frankfurter that's appropriate here. If nowhere else in the relation between church and state, good fences make good neighbors. And that's what we've got with this constitutional exemption. We've got a good fence between church and state, which might be why every one of the nine States in the Ninth Circuit has a religious employer exemption, and a majority of those States have an exemption like Washington's that excludes all forms of discrimination, not just like Title VII. A majority of them are just like Washington's and exclude all forms of discrimination and harassment. Now, in order to find these statutes unconstitutional, we have to look at the lemon test. And I think the only case that I could find in challenges was the Peysik case. And the Peysik case was in California and was looking at California's statute, which parallels Washington. And the Peysik case went and looked at the Amos case, where, you know, in the Amos case they looked at the Title VII exemption, which was more narrow than Washington's exemption or the California case or the California exemption. And Peysik said that even though California had the broader statute, that they found that it was still, that it still survived the Lennon test. Now, I could not find any case where the court actually looked at the constitutionality issue per se, but Judge Tashima in the Valley Beth Shalom case had a case where the court was presented with a summary judgment where the lower court had dismissed all of the claims against a religious organization. And the court in that case said that the claims against the, on the Title VII overturned those, but upheld the dismissal of the claims under California statute, finding that those were dismissed correctly based on the religious employer exemption. Now, while that case did not examine the constitutionality, it did uphold the dismissal based on that California statute. Now, the Amos case and the Peysik case looked at all three prongs of the Lennon test, and applying a case that's very similar to this present one, agreed that it met all three prongs, that it had a very clear secular purpose. And that was as they said in Amos, and as it would be here, it is a permissible legislative purpose to alleviate significant governmental interference with the ability of a religious organization to define and carry out their religious missions. And what about the second element? The second element, with regards to either advancing or inhibiting religion. In that case, in Amos and in Peysik, they both found that the government, by having this statute, is not advancing religion. The government itself has to advance religion by its activities or its influences. And they found neither the Title VII exemption or the California broader exemption was doing that by its own activities and influences. And the third element, was that the entanglement of the government was on it? Yes, which plaintiff concedes does not exist in this case. Well, what about that one? What? Regarding excessive entanglement, Ms. McDonnell concedes that the statute does not amount in excessive entanglement. The only two statutes that are the only two prongs of the Lennon test that are issued are the secular purpose and the neither advancing nor inhibiting religion. And Ms. McDonnell has argued the Texas Monthly case. But the Texas Monthly case is very different. The court, if you look at the Mayweather v. Newland case in Ninth Circuit, they had some good language that explains this difference. It says that, as applied to the non-profit religious, non-profit activities, I'm sorry, I'm putting the wrong language here. Unlike conferring a tax exemption on a religious organization or awarding aid to a faith-based school, the Religious Land Use and Institutionalized Person Act removes burdens on religious exercise. So even though that statute, the RUIPA, was just dealt with religious, it didn't have any secular benefits, it didn't come packaged with any secular benefits, the Ninth Circuit found that it was a permissible purpose. And it distinguished it from those school-type cases and tax-type cases because instead of conferring a benefit, it was relieving governmental interference, which is a very different situation. And that's what we have here. And that's what the court recognized in both Amos and Pisac. These are different situations. In conclusion, the religious employer exemption has been a part of Washington civil rights law since its inception, and it survived all challenges to have it limited, as is shown in the appendix. Whether you uphold the religious employer exemption is the fence that separates church and state. And whether you choose to uphold Judge Lasnik's opinion that Ms. McDonald did not meet the timely requirements, or whether you choose to adopt Judge Kuhnauer's conclusion that the PC and Presbyter were not Ms. McDonald's employer, this case should be dismissed. Thank you very much. Thank you for your argument. Well, Your Honor, first let me address the alternative grounds. First of all, the doctrine of wrongful discharge in public policy is different than the Title VII case, and what Judge Kuhnauer really held was that there is no integrated enterprise doctrine that applies to the wrongful discharge claim. Alternatively, he did look at the evidence that was before him, but on that, and said there wasn't sufficient evidence about that. If you look at the decision, you'll see that the plaintiff also asked for more discovery, and the Court did not allow it at that point. So I don't think this Court can say that the record is identical to the situation here. Plus, on this record, your cases that say you won't review something that hasn't been reviewed by the district court, all say that where there's a factual issue involved, this Court benefits from the analysis of the trial court who is there to look at the factual record before it. And Judge Lesnik has not done that for you, and I don't think you should engage in that now. Secondly, turning to the constitutional issue again for a minute, I want to address Judge Callahan's concern about the ministerial exception. It's premature to decide on, in this case, whether the ministerial exception applies to this facts as a matter of constitutional law. The question before the Court is, what is the scope of the WLAD's exemption? Which is much broader than that. And if it's construed to be the ministerial exception as applied here, that discriminates against religious organizations that don't have clergy. Are we only giving an exemption to churches that have clergy because we have to protect the ministerial exception, but we're not going to give any kind of protection or balancing of interest to churches who don't have clergy? There are many, many religious entities who do not have clergy. Plus, I think that the State has pretty much conceded that there may be unconstitutional the exemption, as it's broadly written, would probably be unconstitutional and argues only that where it touches on a minister, the church's relationship with the clergy, it ought to be protected. But that, again, is not the statute that's way broader than that and runs up against the shoals, as the Cutter case called it, of the Establishment Clause, because it favors advances religion. It goes way, way farther than the Court in Amos, which only exempted the religious affiliation of the employees that are hired. In this case, the exemption, as would be read here, would exempt all religious employers from any sort of discrimination in any situation, regardless of whether a minister is involved or not. And if it's limited to ministers, it's discriminatory under limit. And thank you. I'll conclude your time, and this matter will stand submitted. Thank you both sides for your helpful argument in this matter, and court will now be adjourned.
judges: Thompson, Tashima, Callahan